IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| DAVID P. WATSON, | ) | CASE NO. 3:17-cv-00717 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff David P. Watson ("Plaintiff" or "Watson") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. The Commissioner filed the Transcript of Proceedings on June 8, 2017, (Doc. 11), and supplemented the record on July 28, 2017 (Doc. 13, Doc. 13-1).[1]

Watson's sole argument is that the testimony of the Vocational Expert ("VE") does not support the Commissioner's Step Five finding that there are a significant number of jobs in the national economy that an individual with Watson's Residual Functional Capacity ("RFC") could perform. Having considered Watson's argument, the undersigned recommends, for the reasons set forth below, that the Court **AFFIRM** the Commissioner's decision.

---

[1] The supplement was filed to include the transcript of the oral hearing held on November 23, 2015, which was inadvertently omitted from the administrative record filed on June 8, 2017. Doc. 13, Doc. 13-1.

1

## I. Procedural History

Watson protectively filed[2] an application for DIB on May 1, 2014, alleging a disability onset date of January 23, 2012.[3] Tr. 50, 101, 201-203. He alleged disability due to bipolar disorder, depression, torn biceps, rotator cuff pain, diabetes, neuropathy, Bell's palsy, hypertension, sleep apnea, insomnia, obesity, anxiety, paranoia, erectile dysfunction, arthritis, tendonitis, plantar fasciitis, and enlarged prostate. Tr. 101-102, 112, 133, 143, 215, 223. After initial denial by the state agency (Tr. 133-141) and denial upon reconsideration (Tr. 143-149), Watson requested a hearing (Tr. 150). A hearing was held before Administrative Law Judge Terry Banks ("ALJ") on November 23, 2015. Tr. 1029-1061.

In his December 29, 2015, decision (Tr. 47-74), the ALJ determined that Watson had not been under a disability from January 23, 2012, through December 31, 2014, the date last insured. Tr. 51, 69. Watson requested review of the ALJ's decision by the Appeals Council. Tr. 44-46. On March 3, 2017, the Appeals Council denied Watson's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

**A.     Personal, educational, and vocational evidence**

Watson was born in 1962. Tr. 201, 1035. He lives with his wife in a house owned by his wife's mother. Tr. 1035. Watson completed one year of college and, while in college, he tried welding but was not certified as a welder. Tr. 1036-1037. Watson worked at a textile company

---

[2] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 1/4/2018).

[3] Watson previously filed a DIB application on April 1, 2011, alleging a disability onset date of February 1, 2009. Tr. 50. That prior application was denied on February 27, 2013. Tr. 50, 75-95.

2

from 1984 until 2009. Tr. 1037. While employed there, his jobs included forklift operator, receiving clerk, and machine conveyor. Tr. 1037.

**B.      Medical evidence**

The ALJ's decision includes a detailed recitation of Watson's medical treatment history and opinion evidence. Tr. 58-66. Because Watson's sole issue in this appeal pertains to the VE's testimony and the ALJ's reliance thereon to support the Step Five finding, the undersigned has not recounted that medical evidence.

**C.      Hearing testimony**

Watson was represented at the hearing and testified regarding his impairments. Tr. 1031, 1035-1055. VE James Fuller also testified at the hearing. Tr. 1055-1060. The VE described Watson's past relevant work as that of (1) a hi-lo operator - a semi-skilled, medium level job; (2) a receiving clerk - a skilled, medium level job; and (3) a conveyor off-bearer - an unskilled, medium level job. Tr. 1056. The ALJ then asked the VE to assume a hypothetical individual with the following RFC – ability to perform a full range of light work, except he can never climb ladders, ropes, and scaffolds; he can frequently climb stairs and ramps; he can frequently stoop, kneel, crouch and crawl; he can frequently reach with his upper extremities; he can occasionally reach above his shoulders; he can occasionally handle with the dominant right upper extremity; he can perform simple, repetitive tasks; he can never have contact with members of the general public; and he can only rarely (meaning less than occasionally but not completely precluded) interact with coworkers and supervisors. Tr. 1057. The VE stated that the described individual would be unable to perform Watson's past work as actually performed by Watson or as generally performed in the national economy but opined that there were light, unskilled jobs that the described individual could perform, including (1) sorter, with 500 jobs available in the region

and 20,000 available in the nation; (2) inspector, with 500 jobs available in the region and 30,000 available in the nation; and (3) packager, with 750 jobs available in the region and 50,000 available in the nation. Tr. 1057-1058. The VE indicated that the region he was using was northwest Ohio, southeast Michigan. Tr. 1058.

The ALJ then asked the VE to assume a hypothetical individual as previously described except the individual would also need to sit or stand at will provided he remains on task within normally allowed tolerances; he can occasionally use foot controls; and he is limited to performing simple, routine tasks and work-related decisions. Tr. 1058. The VE indicated that the three jobs previously identified would remain available but the number of jobs would be reduced by 75%. Tr. 1058. With that reduction, the VE indicated that there would be 5,000 sorting jobs in the nation and 125 in the local economy; there would be 7,500 inspector jobs in the nation and 125 in the local economy; and there would be 12,000 packager jobs in the nation and 150-175 in the local economy.[4] Tr. 1058-1059.

The ALJ next asked the VE whether a hypothetical individual with the same limitations set forth in the first hypothetical but who was limited to sedentary work would be able to perform Watson's prior relevant work as he actually performed it or as generally performed in the national economy. Tr. 1059. That VE indicated that the individual would be unable to perform that work. Tr. 1059.

In response to further questioning by the ALJ, the VE indicated that ordinary workday breaks would be 15 minutes in the morning, 15 minutes in the afternoon, and a 30-minute lunch over the course of a 9-hour workday. Tr. 1059. The VE also stated that the ordinary tolerance for absenteeism was 1 day per month and the ordinary tolerance for being off task was 10%. Tr.

---

[4] The VE's calculation of the number of packager jobs after the 75% reduction was slightly incorrect. The regional number would be just over 187 and the national number would be 12,500.

4

1059. Additionally, the VE indicated that an employee would not be allowed to elevate his feet to a 90-degree level at any time during the workday. Tr. 1059.

With the exception of the VE's testimony regarding the sit/stand option, absenteeism tolerances and off-task tolerances, the VE stated that his testimony was consistent with the DOT. Tr. 1060. The VE noted that his testimony regarding the sit/stand option, absenteeism, and off-task rates was based on his 37 years as a vocational rehabilitation counselor. Tr. 1060.

Watson's counsel asked the VE whether there would be any issues with transferrable skills from any of Watson's jobs. Tr. 1060. The VE responded that there would not be for less than medium physical demand level. Tr. 1060.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5] . . . .

42 U.S.C. § 423(d)(2).

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

5

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his December 29, 2015, decision, the ALJ made the following findings:[6]

1. Watson met the insured status requirements through December 31, 2014. Tr. 53.

---

[6] The ALJ's findings are summarized.

6

2. Watson did not engage in substantial gainful activity during the period from his alleged onset date of January 23, 2012, through his date last insured of December 31, 2014. Tr. 53.

3. Through the date last insured, Watson had the following severe impairments: personality disorder, not otherwise specified, with narcissistic traits; mood disorder, not otherwise specified; diabetes mellitus; right shoulder rotator cuff tear; peripheral neuropathy; and obesity. Tr. 53, 54. Non-severe impairments included Bell's palsy, obstructive sleep apnea, hypertension/hyperlipidemia, plantar fasciitis, hypogonadism, and history of anterior cervical mass on neck. Tr. 53-54.

4. Through the date last insured, Watson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 54-57.

5. Through the date last insured, Watson had the RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, Watson must be allowed to sit or stand at will, provided he remains on task consistent with normally allowed tolerances; he can occasionally use foot controls; never climb ladders, ropes or scaffolds; and frequently climb stairs and ramps; he can frequently stoop, kneel, crouch, and crawl; frequently reach with the upper extremities; occasionally reach above the shoulders; and occasionally handle with the dominant right upper extremity; he can perform simple, repetitive tasks and work-related decisions; he can never have contact with members of the general public and can only rarely (less than occasionally but not completely precluded) interact with coworkers and supervisors. Tr. 57-66.

6. Through the date last insured, Watson was unable to perform any past relevant work. Tr. 66-67.

7. Watson was born in 1962 and was 52 years old, defined as an individual closely approaching advanced age, on the date last insured. Tr. 67.

8. Watson has at least a high school education and is able to communicate in English. Tr. 67.

9. Transferability of job skills was not material to the determination of disability. Tr. 67.

10. Through the date last insured, considering Watson's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Watson could have performed, including sorter, inspector and packager. Tr. 67-68.

Based on the foregoing, the ALJ determined that Watson was not under a disability at any time form January 23, 2012, the alleged onset date, through December 31, 2014, the date last insured. Tr. 69.

## V. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Watson contends that the ALJ's Step Five determination is not supported by substantial evidence because the VE did not identify jobs existing in significant numbers in the national economy.

At Step Five, the burden shifts to the Commissioner to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Walters*, 127 F.3d at 529. As the Regulations provide, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. 404.1566(a). "There is no bright line boundary separating a 'significant number' from insignificant number of jobs." *Howard v. Astrue*, 2012 WL 4753364, * 8 (N.D. Ohio 2012) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Thus "[w]hat constitutes a significant number of jobs is to be determined on a case-by-case basis." *Id.* A court "should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Hall*, 837 F.2d at 275. "The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* Accordingly, this Court must determine, based on the circumstances of this case, whether the number of jobs as found by the ALJ based on the VE testimony constitutes a "significant number" of jobs such that the VE's testimony constitutes substantial evidence.

Here, the VE identified three jobs as being available to an individual with an RFC mirroring Watson's RFC – sorter, inspector, and packager. Tr. 1058. The VE had previously identified these jobs as being available to an individual with a less restrictive RFC than Watson

in the following numbers – sorter (500 regionally and 20,000 nationally); inspector (500 regionally and 30,000 nationally); and packager (750 regionally and 50,000 nationally). Tr. 1057-1058.  When presented with a hypothetical mirroring Watson's RFC, the VE indicated that the same jobs would remain available but the job numbers would be reduced by 75%.  Tr. 1058-1059.  Applying this 75% reduction, the ALJ found that there were 125 sorter jobs in the Ohio economy and 5,000 in the national economy; 125 inspector jobs in the Ohio economy and 7,500 in the national economy; and 187 packager jobs in the Ohio economy and 12,500 in the national economy.  Tr. 68, FNs 27-29.  Based on this evidence, the ALJ concluded that there were a significant number of jobs in the national economy that Watson could have performed.  Tr. 67-68.

      Watson argues that the number of jobs available are not even close to the 1,350 to 1,800 number highlighted in *Hall* as being a significant number of jobs.  However, Watson's argument as presented in his opening brief is based on a faulty calculation of the number of jobs that would remain available after the 75% reduction.  Rather than start with the original numbers, i.e., 500/20,000 sorter jobs, 500/30,000 inspector jobs, and 750/50,000 packager jobs, Watson applies a 75% reduction on top of the already 75% reduced numbers, arguing that the available number of sorter jobs is 32 jobs regionally and 1,250 nationally; 32 inspector jobs regionally and 1,875 nationally; and 32 packager jobs regionally and 3,125 nationally.  Doc. 12, pp. 12-13.[7]  Moreover, as indicated above, *Hall* did not establish a bright-line for what is or is not a significant number of jobs.  Rather, each case is evaluated based on the circumstances of the case.

---

[7] In his Reply brief, Watson cites to and appears to acknowledge the correct 75% reduction numbers.  Doc. 15, p. 2.

In this case, after accounting for the 75% reduction, a total of 437 jobs remained available regionally and a total of 25,000 jobs remained available nationally. *See Lash v. Comm'r of Soc. Sec.*, 2015 WL 3505875, * 3 (E.D. Mich. June 2, 2015) (rejecting plaintiff's argument that it was improper to aggregate job totals for different positions and stating that "courts routinely aggregate numbers of jobs from different categories when determining whether available jobs exist in the national economy[]"); *Dowlen v. Astrue*, 2009 WL 1024622, * 8 (M.D. Tenn. Apr. 10, 2009) ("[I]t is clear that defendant's step five burden is satisfied by proof of a significant number of jobs in the *national* economy, regardless of the corresponding regional numbers.") (emphasis in original).

Watson has not demonstrated that the foregoing numbers do not constitute a significant number of jobs in the national economy. As stated by the Sixth Circuit, "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016); *see also Dawson v. Comm'r of Soc. Sec.*, 468 Fed. Appx. 510, 514 (6th Cir. 2012) (unpublished) (19,000 unskilled jobs satisfied burden of showing a significant number of jobs); *Bishop v. Shalala*, 64 F.3d 662, *2 (6th Cir. 1995) (unpublished) (VE testimony that there were approximately 6,100 jobs available was deemed sufficient to demonstrate significant number of jobs in the national economy); *Weaver v. Sec'y of Health & Human Servs.*, 34 F.3d 1069, *1 (6th Cir. 1994) (unpublished) (500 jobs in local economy where claimant resided constituted significant number of jobs).

Further, Watson has not demonstrated that the circumstances of this case dictate a different outcome. In his Reply brief, in an attempt to minimize the case law relied upon by the Commissioner, Watson presents policy arguments. Doc. 15, pp. 2-3. For example, he questions the utility of relying on the DOT, arguing that the DOT is outdated. Doc. 15, pp. 2-3. However,

Watson did not challenge the VE's reliance on the DOT at the hearing.  Moreover, he has not shown that the information relied upon by the VE or the ALJ was inaccurate or unsupported by the record.

Here, the ALJ considered the evidence and determined that 437 jobs regionally and 25,000 jobs nationally constituted a significant number of jobs in the national economy and Watson has not shown error with this determination.  Accordingly, the undersigned recommends that the Court reject Watson's sole argument and affirm the Commissioner's decision.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

January 4, 2018

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).