**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

David P. Watson,  Case No. 3:17CV717

    Plaintiff

    v.  **ORDER**

Commissioner of Social Security,

    Defendant

This is a Social Security case in which the plaintiff, David Watson, appeals the Commissioner's decision denying his application for Disability Insurance Benefits.

An administrative law judge found that Watson was not disabled because: 1) he possessed the residual functional capacity to perform "less than the full range of light work as defined in 20 C.F.R. § 404.1567(b)"; and 2) "there were jobs that existed in significant numbers in the national economy that [Watson] could have performed." (Doc. 11 at 62, 67). To support the latter conclusion, the ALJ relied on the unchallenged testimony of a vocational expert that 25,000 such jobs, in three different categories, were available regionally, with 437 of those jobs available in northwest Ohio and southeast Michigan. (*Id.* at 73 & nn. 27–29).

Pending is Magistrate Judge Burke's Report and Recommendation, which recommends that I affirm the Commissioner's decision. (Doc. 16). She concluded that substantial evidence supported the ALJ's finding that a significant number of jobs existed in the national economy that Watson could perform. (*Id.* at 9–12).

In so concluding, Magistrate Judge Burke recognized that there was "'no bright line boundary separating a significant number from [an] insignificant number of jobs.'" (*Id.* at 9) (quoting *Howard v. Astrue*, 2012 WL 4753364, *8 (N.D. Ohio)).

Regarding the 25,000 jobs at issue here, the Magistrate Judge found that the figure was consistent with cases holding that figures much lower still amounted to "significant numbers" of jobs. (*Id.* at 11) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs) and *Dawson v. Comm'r of Soc. Sec.*, 468 F. App'x 510, 514 (6th Cir. 2012) (19,000 jobs)); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 547, 59 (6th Cir. 2009) (500 to 2,500 jobs).

Magistrate Judge Burke then rejected Watson's argument that one basis for the vocational expert's testimony – the *Dictionary of Occupational Titles*, which defines different types of jobs – was unreliable. For one thing, the Magistrate Judge observed, Watson had not "challenge[d] the VE's reliance on the DOT at the hearing" before the ALJ. (Doc. 16 at 11–12). For another, Watson had not shown that "the information relied upon by the VE or the ALJ was inaccurate or unsupported by the record." (*Id.* at 12).

Watson has filed an objection (Doc. 17), but on de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule the objection, adopt the R&R as the order of the court, and affirm the Commissioner's decision.

Watson repeats his argument that the *DOT* is unreliable because it is outdated (Doc. 17 at 2–4), but that argument gets no more traction with me than it did with the Magistrate Judge. That is because Watson did not challenge the reliability of the vocational expert's testimony, and his reliance on the *DOT*, at the hearing before the ALJ. Indeed, Watson's lawyer did not ask the expert how he determined which jobs Watson could perform, or how he calculated the number of such jobs

2

available in the national or regional economy. (Doc. 13–1 at 29–34). Consequently, there is no evidence in the record to support Watson's argument that the *DOT* numbers are, in fact, unreliable.

With no factual basis for his objection, Watson points to decisions from the Seventh Circuit that have criticized the use of the *DOT* in Social Security cases. *E.g.*, *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702, 708–09 (7th Cir. 2014). According to Watson, the Seventh Circuit has rejected vocational-expert testimony that relies on the "outdated" *DOT*, particularly when the experts:

> estimate the number of jobs of a type the applicant . . . can perform by the unacceptably crude method of dividing the number of jobs in a large category (which may be the only available data) by the number of job classifications in the category, even though there is no basis for assuming that there are that many jobs available.

(Doc. 17 at 3).

While it's true that the Seventh Circuit has been rather critical of vocational experts' reliance on the *DOT*, it is not clear that the Sixth Circuit shares those concerns.

In *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 790 (6th Cir. 2017), the Circuit surveyed the case law and found that the Seventh Circuit's approach to vocational-expert testimony "has not been a popular export" among the courts of appeals.

The Sixth Circuit also suggested that the Seventh Circuit's approach, under which vocational experts must "provide the data and reasoning used in support of their conclusions upon request," was tantamount to incorporating Federal Rule of Evidence 702 into Social Security hearings. *Id.* at 790. But that was inconsistent with the judgment of Congress, the Sixth Circuit observed, which had provided that evidence is admissible in proceedings before the Commissioner without regard to the Rules of Evidence. *See* 42 U.S.C. § 405(b)(1).

3

What's more, the court in *Biestek* held that the ALJ did not commit reversible error when she denied the claimant's request that the vocational expert produce "underlying data or analyses" to support "her opinions regarding the work available to Biestek." *Id.* at 789–90. "While it is undoubtedly true," the court explained, "that vocational expert testimony that is conjured out of whole cloth cannot be considered substantial evidence . . . guarding against baseless testimony is very different from incorporating the stringent evidentiary requirements embodied in the Federal Rules of Evidence." *Id.* at 790–91 (internal quotation marks omitted).

Here, and unlike in *Biestek*, Watson failed to raise even a general objection to the vocational expert's testimony, let alone inquire specifically into his reliance on the *DOT* or ask how he concluded there were 25,000 jobs, in three different categories, that Watson could perform. Reversing the Commissioner's decision on the basis that the ALJ did not, *sua sponte*, undertake that inquiry on Watson's behalf would be inconsistent with *Biestek*, which establishes that the ALJ would have had discretion to accept the vocational expert's testimony over Watson's objection that it was unreliable.[1]

Finally, I deny Watson's request for a "sentence six" remand. The proper time to raise this issue was the original hearing before the ALJ, not, as Watson has done, in his reply brief before the Magistrate Judge and in an objection to her persuasive R&R.

---

[1] A further consequence of Watson's failure to object is that there is no reason to think the vocational expert in this case employed the "unacceptably crude" (Doc. 17 at 3) method of calculating available jobs that Watson and the Seventh Circuit have criticized in other cases.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Watson's objection to the Magistrate Judge's Report and Recommendation be, and the same hereby is, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 16) be, and the same hereby is, adopted as the order of the court; and

3. The Commissioner's decision be, and the same hereby is, affirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge